IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>　　　　　Plaintiff,<br>　v.<br><br>LORAM MAINTENANCE OF WAY, INC., a Minnesota Corporation,<br><br>　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO COMPEL AND GRANTING IN PART MOTION FOR PROTECTIVE ORDER**<br><br>Case No. 2:04 CV 271 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

　　　　Defendant Loram filed a motion to compel discovery[1] and Plaintiff Union Pacific Railroad Company (UP) responded with a motion for a protective order.[2] The motions deal with Defendant's ability to reach UP documents which are attorney-client and/or work product privileged.

### Background Facts[3]

　　　　Loram grinds rails for railroads as part of the railroads' maintenance of those rails. Rail wear results in a flat surface on the rail, and Loran restores a crown to the rail.[4] On January 1, 2000, Loram and UP entered into a contract for rail grinding services for Loram to grind UP rails. The contract contained provisions requiring Loram to indemnify and insure UP against certain risks but excluded losses caused by the negligence of UP.

---

[1] Motion to Compel, docket no. 54, filed December 1, 2005.
[2] Motion for Protective Order, docket no. 61, filed January 16, 2006.
[3] Except where noted, these facts are taken from Loram's Memorandum in Support of Motion to Compel, docket no. 55, filed December 1, 2005.
[4] Order [on Cross Motions for Summary Judgment] (Order) at 1-2, docket no. 26, filed October 26, 2004.

On October 12, 2000, a UP employee named Robert Helmick was working as the UP "pilot" on Loram's rail grinder while Loram ground UP's rails. "Pilots" coordinate with UP dispatchers regarding when and where Loram can grind UP's rails.

Helmick had completed his pilot duties for the day and was dismounting the grinder[5] when he was injured while walking on ballast on UP's tracks. The ballast is the "fill material" upon which the ties and tracks lie. 49 C.F.R. §213.103 requires ballast to support and restrain the track.

Mr. Helmick brought a claim against UP seeking recovery under the Federal Employees Liability Act (FELA) which governs claims brought by railroad employees. Among other affirmative defenses, UP asserted that Mr. Helmick was contributorily negligent in causing his own injuries. UP tendered the defense to Loram and Loram declined to defend.[6] After conducting discovery in that case, UP settled Mr. Helmick's claims for $250,000.00.

On March 25, 2004, UP filed this action against Loram requesting that Loram indemnify UP for the amount UP paid to Helmick in settlement of his claim. On October 26, 2004, the district judge entered an order on the parties' dispositive motions finding that "a material issue of fact remains as to whether Mr. Helmick's injury was the result of UP's negligence."[7]

---

[5] Union Pacific Railroad Company's Memorandum in Opposition to Defendant's Motion to Compel and of Points and Authorities in Support of Motion for Protective Order (UP Opposition) at iii, docket no. 63, filed January 16, 2006.
[6] UP Opposition at iv.
[7] Order at 6.

### Litigation of Negligence Issue

As the parties prepare to litigate the negligence issue and the rest of the case, UP has designated Steven A. Napper as an expert witness[8] to give an "opinion regarding the reasonableness of the settlement" of the Helmick litigation.[9] The opinion contains Napper's evaluation of the claims Helmick presented, under FELA and is based on Napper's "experience as a FELA defense counsel in Denver since 1979."[10] Indeed, he is Senior Trial Counsel for UP, having been employed by UP since 1983.[11] He was counsel in the Helmick suit, though UP claims he was not lead counsel.[12]

Further, UP has designated Alice M. de Stitger, a UP attorney involved in settling the Helmick claim, as its representative for a 30(b)(6) deposition set for early February.[13]

### Present Dispute

The parties' dispute revolves around file documents of UP's counsel in the Helmick litigation. Loram requested this information in discovery, and UP produced a Privilege Log identifying materials withheld.[14]

---

[8] Union Pacific Railroad Company's Disclosure of Expert Testimony (UP's Expert Disclosure), docket no. 48, filed August 15, 2005.
[9] Letter from Steven A. Napper (Napper Letter), August 11, 2005, attached to UP's Expert Disclosure.
[10] *Id.*
[11] Curriculum Vitae attached to Napper Letter.
[12] "For the record, Mr. Napper was not the lead attorney in Mr. Helmick's underlying action against UPRR." Union Pacific Railroad Company's Reply Memorandum in Support of Motion for Protective Order (UP Reply) at 11, docket no. 74, filed January 27, 2006.
[13] Loram Maintenance of Way, Inc.'s Combined Reply Memorandum . . . (Loram Reply) at ii and iv, docket no. 69 and 70, filed January 24, 2006. [Note: Under CM/ECF, the court's electronic filing system, a memorandum referring to more than one motion must be docketed separately as to each motion. Therefore, the same document (opposing the UP motion for protective order and in reply on Loram's motion to compel) appears twice in the court's docket.]
[14] Exhibit A to UP Opposition.

UP has nonetheless produced a few documents from the Helmick litigation which were listed in the Privilege Log, but refuses to produce any more. Among those documents produced are:

    a.    All communications between de Stitger and Max Ferguson, UP's engineer expert in the Helmick and Loram cases;[15]

    b.    Mr. Napper's "privileged"[16] evaluation of the Helmick claim dated July 15, 2002;[17] and

    c.    Ms. de Stitger's "highly privileged"[18] evaluation of the Helmick case dated March 3, 2003.[19]

UP says the documents it is withholding "are not from Mr. Napper's file. To Mr. Napper's knowledge, at no time has he ever seen [them]."[20] Also, UP claims "Ms. de Stitger has not reviewed the documents in her file in recent memory and does not intend to rely on those documents when providing her testimony in this case."[21]

There is also a subsidiary dispute about a missing document. Napper's evaluations reference a memorandum dated April 19, 2002. "UPRR has diligently looked for and is unable to locate" it and now says, "For all UPRR knows, this memorandum does not exist."[22]

The dispute is not really over privilege – Loram concedes the disputed documents are attorney-client or work product privileged. Loram claims, however, that any privileges have been waived.

---

[15] "UPRR voluntarily agrees to produce documents either to or from Max E. Ferguson, an expert witness retained by UPRR in this case, notwithstanding their work product nature." UP Opposition at vi. These documents 1, 8 and 25 from the Privilege Log are attached as Exhibit A to UP Reply.
[16] UP Opposition at vi, docket no. 63, filed January 16, 2006.
[17] *Id.* Attached as Exhibit D to UP Opposition. *See also* UP Reply at 2.
[18] UP Opposition at vi.
[19] *Id.* Attached as Exhibit E to UP Opposition. *See also* UP Reply at 2. This is document 33 from the Privilege Log.
[20] UP Reply at 2.
[21] *Id.*
[22] UP Reply at 4.

**Standards for Implied Waiver of Attorney-Client Privilege**

Privilege issues in this diversity case are determined by Utah law.[23] Utah case dictum in *Doe v. Maret*[24] approvingly recognizes waiver of privilege "by placing attorney-client communications at the heart of a case . . . ."[25] The cases cited in the *Doe* opinion involved the defense of good faith reliance on advice of counsel, as is raised in patent litigation. Loram's memoranda on these motions cite many such cases. But "advice of counsel" is not precisely presented as an element of a claim or defense in this case, though the advice and evaluation of counsel precipitated the settlement with Helmick.

*Doe* rejected the notion that privilege is automatically waived by bringing a case focused on the plaintiff's decision made *on the basis of* advice of counsel. "[Plaintiff] did not waive the attorney-client privilege under Rule 504 merely by bringing a suit where her decision [based on advice of counsel] is at issue."[26] This case is not really focused on UP's decision (which was made in reliance on advice of counsel) as much as whether *UP's negligence* was a cause of Helmick's injuries and on the *reasonableness* of the settlement.

The parties cite *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, a more helpful Tenth Circuit case which carefully analyzes the three dominant alternative approaches "to determine whether a litigant has waived the attorney-client privilege."[27] Ranked from most invasive to the most respectful of the privilege, they are:

> "[T]he 'automatic waiver' rule, which provides that a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative

---

[23] Fed. R. Evid. 501.
[24] *Doe v. Maret*, 984 P.2d 980, 983-84 (Utah 1999).
[25] *Id.*
[26] *Doe*, 984 P.2d at 984
[27] 136 F.3d 695, 699 (10th Cir. 1998).

> defense that raises as an issue a matter to which otherwise privileged material is relevant."[28] (This approach was rejected in *Doe.*)
>
> The "vital relevance" rule which provides that privilege is "waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case."[29]
>
> The most narrow "advice at issue" approach which provides that "a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation."[30]

Loram relies on *Dion v. Nationwide Mutual Insurance Company*,[31] a first-party bad faith insurance case. Under that cause of action, opinion and analysis are clearly at issue in determining the insurer's rationale. Likewise, in this case Napper's expert report expresses opinions on liability theory and degree, jury strategy, and facts known to UP. Napper and de Stitger's case evaluations put their prior work at issue. UP even admits the evaluations "delve into UPRR's thought processes and assessments of Mr. Helmick's liability claims and UPRR's monetary exposure" and "capsulize any subordinate information contained in the withheld documents . . . ."[32] UP has put the advice – and thought processes – of its attorneys directly at issue, so if Utah were to adopt that most restrictive approach to implied privilege waiver, Loram would receive the documents.

Alternatively, the analysis under the second approach ("vital relevance") would yield the same result. Utah would most likely follow that second of the three proposed analyses. The Restatement finds this "vital relevance" approach the best, though using different language. "The preferred approach is to require that the client either permit a fair presentation of the issues

---

[28] *Id.*
[29] *Id.*
[30] *Id.* at 700.
[31] 185 F.R.D. 288, 295 (D. Mont. 1998).
[32] UP Opposition at 5.

raised by the client or protect the right to keep privileged communications secret by not raising at all an issue whose fair exposition requires examining the communications."[33]  Though stated in different terms, the Restatement approach is the same as "vital relevance" because it calls for "balance [of] the need for disclosure against the need for protecting the confidentiality of the client's communications on the facts of the individual case."[34]  Thus, the "vital relevance" is weighed.

### Implied Waiver of Work Product Privilege

While there is a distinct test for waiver of the work product privilege, it has a close resemblance to the "vital relevance" standard for waiver of the attorney-client privilege.

> Rule 26(b)(3) [of the Federal Rules of Civil Procedure] prevents discovery of an attorney's work product unless (1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship.[35]

Thus, the real key to waiver of either privilege is the centrality of the need for the information.  While the waiver of attorney-client privilege also requires an affirmative act by the privilege holder, the determinative issue under both tests is whether the need for information outweighs the policies behind the privilege.

### Nature of Indemnity Litigation

The nature of indemnity litigation makes prior work by counsel very significant.  The reasonableness of any settlement is at issue.  In that regard, "communications between [plaintiff's] attorneys to [plaintiff seeking indemnity] regarding their assessments of the case

---

[33] Restatement (Third) of the Law Governing Lawyers 3d § 80 Reporter's Note cmt. b.
[34] *Id.*
[35] *Frontier*, 136 F.3d at 704.

brought by the plaintiffs"[36] are key. Even where a party claims it "will be able to support its claims of reasonableness without relying upon those privileged communications,"[37] "the mental impressions and analysis by [the indemnitee's] attorneys regarding the basis of [the indemnitee's] liability and the reasonableness of the amount paid in settlement are at issue in [indemnity] litigation."[38] "By seeking indemnity, [the indemnitee] has placed at issue the basis for its liability, its liability analysis and the reasonableness of the settlement paid."[39] This alone can be sufficient to find a waiver of the privilege.

*Frontier* was an indemnity case, like this one. It applied the "vital relevance" test but found the privileges were intact for reasons not present here.

Frontier and its insurer settled many claims arising out of personal injuries in an area where Gorman-Rupp had pumps. After the settlements, Frontier sued Gorman-Rupp for indemnity. The lower court gave Gorman-Rupp access to all records of Frontier's counsel prior to the settlement of the claims for which indemnity was sought, ruling "that Frontier had waived the attorney-client privilege by filing a suit for equitable implied indemnity . . . ."[40]

The Tenth Circuit determined, however, that Wyoming would reject the "automatic waiver" rule (as Utah did in *Doe*) and referred to a case from the Eastern District of Washington for analysis of the second rule, referred to above as "vital relevance."

> [T]he intermediate approach [is stated in] the widely cited case *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975). Under the Hearn test, each of the following three conditions must exist to find waiver:
> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the

---
[36] *Conoco v. Boh Bros. Const. Co.*, 191 F.R.D. 107,109 (W.D. La. 1998).
[37] *Id.*
[38] *Id.* at 111.
[39] *Id.*
[40] *Frontier*, 136 F.3d at 698.

> asserting party put the protected information at issue by making it relevant
> to the case; and (3) application of the privilege would have denied the
> opposing party access to information vital to [its] defense. [41]

*Frontier* alleged an i*mplied indemnity* claim (unlike the contract in this case) in which no defense was tendered (unlike this case). Frontier "had to prove that Gorman-Rupp's pump caused the fire and explosion which created claims against Frontier and that the settlements were reasonable and made in good faith to discharge its actual or potential liability to the burn victims."[42] The legal theory of liability was not in question.[43]

Because Gorman-Rupp had access to other information regarding the reasonableness of the settlement, such as attorneys for the victim/claimants and expert witnesses other than Frontier's counsel, the Tenth Circuit held the privilege was not waived. "[T]he information must . . . be 'vital,' which necessarily implies the information is available from no other source."[44]

The value of the privileged information was also minimal.

> Gorman-Rupp has candidly admitted on appeal that [t]here is nothing contained in
> [the privileged] material which could allow the jury to engage in any meaningful
> analysis of whether or not the Gorman-Rupp pump was negligently manufactured,
> designed or distributed, or whether the pump was defective. Furthermore, the
> jury could not in any way determine whether there was any misrepresentation
> made by Gorman-Rupp regarding the pumps in that evidence.[45]

---

[41] *Frontier*, 136 F.3d at 701 (quoting *Hearn,* 68 F.R.D. at 581).

[42] *Id*.

[43] UP claims that the absence of the indemnitee's negligence was an issue in *Frontier*. "Frontier Refining involves an action for indemnity. To recover settlements paid to injured employees, the plaintiff had to prove that it was not negligent for the employees' injuries 'and that the settlements were reasonable and made in good faith . . . .' 136 F.3d at 701." Opposition at 3-4. The case, however, says nothing about proving lack of negligence of the indemnitee. The full citation is: "To recover on its indemnity claim, Frontier therefore had to prove that Gorman-Rupp's pump caused the fire and explosion which created claims against Frontier and that the settlements were reasonable and made in good faith to discharge its actual or potential liability to the burn victims." *Frontier*, 136 F.3d at 701.

[44] *Id.*

[45] *Id.* at 702 n.9.

Because the information was not vital, even though relevant to claims made by the privilege holder and because Gorman-Rupp had other accessible sources, Gorman-Rupp was denied use of the privileged information in trial after remand.

Here, the legal theory of liability is also at issue. Whether UP was negligent as to Helmick is critical in this case. Thus, the information gathered by UP's counsel and their analysis is very important. They are percipient witnesses as to the Helmick litigation. Further, UP's Helmick counsel have roles in this litigation that are different than the roles of counsel in *Frontier*.

Under the *Hearn* test, UP has affirmatively filed suit and has affirmatively designated Nipper and de Stitger as witnesses, putting the protected information at issue by making it relevant to the case. Application of the privilege would deny the opposing party access to information vital to its defense.

Under Rule 26(b)(3), Loram has demonstrated substantial need for the material and Loram is unable to obtain the substantial equivalent of the material by other means.

### Significance of Roles of Counsel

UP's counsel were both involved in the Helmick litigation, and also have significant roles in this litigation *outside* their roles as attorneys for UP. Napper has been designated and has produced a report as an expert witness. Obviously, his role in the prior Helmick litigation will enhance his position as an expert witness. Ms. de Stitger has been designated as a 30(b)(6) representative. Presumably, she would also testify at a trial, and also rely on – or at least be enhanced by – her participation in the Helmick litigation.

These dual roles of counsel weigh heavily in favor of permitting discovery of the privileged materials.  Also, these roles themselves give rise to waiver of the privileges.

### Effect of Attorney Designation as Witness

When an attorney in a prior matter serves as an expert witness in new litigation, privileges are found to be waived.  This is another way of saying that the attorney's prior communications and work product are at issue.  Many of those cases are patent litigation, where the attorney prosecuting the patent is designated as a witness and then subject to wholesale discovery.  In those cases, the privileges are not shielding unjustified intrusion as much as allowing the proponent of the testimony to selectively use and deny access to information.

> The doctrine of waiver by implication reflects the notion that the attorney-client privilege was intended as a shield, not a sword.  In other words, a defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.  Selective disclosure for tactical purposes waives the privilege.[46]

An unpublished decision from the Southern District of New York provides guidance in circumstances even more similar to this case than patent litigation.  An expert witness on legal issues for one party had consulted for that party for many years and had served as an expert witness for that party in other cases.  The court found little trouble finding a waiver of privilege by that designation.

> [I]t is well established that a party waives the attorney-client and work product privileges whenever it puts an attorney's opinion into issue, by calling the attorney as an expert witness or otherwise.[47]

---

[46] *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 295 (D. Mont. 1998) (citations quotations and parentheses omitted).
[47] *Herrick Co., Inc. v. Vetta Sports, Inc.,* No. 94 CIV. 0905(RPP), 1998 WL 637468, *1 (S.D.N.Y. Sept. 17, 1998) (citations omitted).

However, the issue of the scope of the waiver was in sharp dispute. The party proffering the expert argued "that the waiver extends only to documents considered by that disclosed testifying expert witness in forming the opinions he or she intends to express in trial of the case," while the other party argued "that the waiver extends to other relevant materials, including other instances in which the attorney advised the party on similar matters."[48] The court found that

> By designating [the attorney] as an expert trial witness, [the proponent party] has opened the door to such discovery, which covers documents other than those directly considered by [the attorney] in forming his opinions. Prior inconsistent opinions by [the attorney] on the same subject matter would be highly relevant material.[49]

After considering the need for expansive discovery of experts to prepare for cross examination, in light of the ability of an expert to testify directly about opinion without discussing all foundational facts, the court ordered that discovery be broadly allowed. The proponent of the expert was ordered to "provide . . . the withheld documents relating to advice given . . . on the general subject matter of [the expert's] report filed in this action."[50] Key in the court's decision was that "the very status which grants his testimony weight with the jury would prevent his testimony from being thoroughly cross-examined" if discovery were not allowed.[51]

The same factors favor broad waiver of the privilege in this case, as to the entire Helmick subject matter. Both Napper and de Stitger are designated as witnesses for UP. They are enhanced (and even qualified) by their prior involvement. They are each relying on their prior knowledge, subjectively filtered. Loram is entitled to the ability to test them.

---

[48] *Id.* at *2.
[49] *Id.*
[50] *Id.* at *3.
[51] *Id.*

## Express Waiver

Further, UP has made express waiver of the privilege as to some documents and thus has effected a subject matter waiver. Utah recognizes express waiver by disclosure.

> When a client chooses to answer a question calling for privileged material by disclosing privileged communications, she waives the privilege *at least* as to the disclosed communications.[52]

In that case, the Utah Supreme Court held that responses to deposition questions which disclosed some part of confidential communications effected a "waiver . . . limited to the particular subject matter and the conversation disclosed . . . in her deposition testimony."[53]

Here, the waiver by disclosure is broad because the materials produced are broad in scope. Both Napper's 2005 report and his memorandum from 2002 cover the breadth of the Helmick case. One can expect that de Stitgert will testify out of her prior knowledge, in spite of her promise not to review her file, and her prior communications with UP's expert engineer are also in play. Most importantly, UP has typified the documents it produced as "confidential" and "highly confidential." UP admits the evaluations "delve into UPRR's thought processes and assessments of Mr. Helmick's liability claims and UPRR's monetary exposure."[54] This clearly works as a waiver:

> This selective disclosure of work product to establish the basis for an opinion of counsel constitutes an implied waiver of all work product relevant to the same issue. While the work product privilege is accorded to protect the adversary system by affording an attorney a private realm in which to develop his legal strategies, that privilege impedes a fair adversarial presentation of the facts when it is invoked to avoid disclosure of anything other than a necessarily biased presentation of the relevant facts.[55]

---

[52] *Doe*, 984 P.2d at 986 (emphasis added).
[53] *Id.* at 987.
[54] UP Opposition at 5.
[55] *Coleco Industries, Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688, 691 (S.D.N.Y. 1986).

UP is selecting and filtering the information and even promising that Napper and de Stitger will not review any of the Helmick case documents for this case.  This promise reinforces the reason to find the privileges waived.  It is important that Loram be able to test Napper and de Stitger's current positions against their past documentation, and if necessary, tie them down to their prior opinions.  This is Loram's role as an adversary, and the process requires Loram be equipped for the role.

Finally, the information sought is *not* available from other sources.  The first hand contemporaneous, information on the reasonableness of the settlement and the contemporaneous recording of the facts and analysis of the Helmick case is found only in the materials sought.

## Conclusion

For all these reasons, the documents in question should be produced, subject to a protective order, because they are only available to Loram by reason of waivers specific to Loram as a party litigant.  The magistrate judge has reviewed the documents in camera and they will be placed in the file under seal.  There is no reason to withhold any of the documents except document 22 which is not relevant to the claims in this case.  Documents previously provided with redactions should be provided in unredacted form.

## ORDER

IT IS HEREBY ORDERED that the motion to compel[56] is GRANTED, the motion for protective order[57] is GRANTED IN PART, and the documents listed on the Privilege Log shall be produced to Loram (with the exception of No. 22) forthwith. Finding that the positions of each party are substantially justified, no expenses are awarded.[58]

### Protective Order

IT IS FURTHER ORDERED until the parties stipulate to a different form of protective order, Defendant and counsel are ordered not to disseminate any of the materials listed in the Privilege Log (including those already produced) and shall hold such information in confidence, shall use the information only for purposes of this civil action and for no other action, and shall not use it for any business or other commercial purpose, and shall not disclose it to any other person, other than as reasonably required for purposes of this civil action. At the conclusion of this action, including through all appeals, any person receiving such records shall destroy or return to the Plaintiff all such records received and certify to the other party such destruction or return. Such return or destruction shall not relieve any person from any of the continuing obligation imposed upon by this order. If a person receiving such records is subpoenaed in another action or proceeding or served with a document or testimony demand or a court order, and such subpoena or demand or court order seeks information subject to this order, that party shall give prompt written notice to opposing counsel and allow opposing counsel an opportunity to oppose such subpoena or demand or court order prior to the deadline for

---

[56] Motion to Compel, docket no. 54, filed December 1, 2005.
[57] Motion for Protective Order, docket no. 61, filed January 16, 2006.
[58] "'justified in substance or in the main'– that is, justified to a degree that could satisfy a reasonable person." *Hutchinson v. Pfeil*, No. 98-5043, 1999 WL 1015557, at *3 (10th Cir. Nov. 9, 1999) (unpublished decision).

complying with the subpoena or demand or court order.  No compulsory disclosure to third parties of information subject to this order shall be deemed a waiver of any claim of confidentiality, except as expressly found by a court or judicial authority of competent jurisdiction.   The court's jurisdiction to enforce this order will continue after the termination of this action.

      Dated this 1st day of February, 2006.

                          BY THE COURT:

                          _____s/David Nuffer_____
                          United States Magistrate Judge